EXHIBIT F-3

AFFIDAVIT

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

I, BEVERLY K. WILSON, (BLACK, U.S. NATIONAL ORIGIN, FEMALE, NON-DENOMINATIONAL), DISTRICT ADJUDICATION OFFICER, GS-12, CITIZENSHIP PROGRAM, LOS ANGELES DISTRICT OFFICE, WESTERN REGION, IMMIGRATION AND NATURALIZATION SERVICE, DEPARTMENT OF JUSTICE, IN LOS ANGELES, CALIFORNIA, MAKE THE FOLLOWING STATEMENT FREELY AND VOLUNTARILY TO DAVID BUXTON, WHO HAS IDENTIFIED HIMSELF TO ME AS AN EEO CONTRACT INVESTIGATOR FOR THE DEPARTMENT OF JUSTICE, INVESTIGATING A COMPLAINT OF DISCRIMINATION FILED BY FRANK CARDARELLA, KNOWING THAT THIS STATEMENT IS NOT CONFIDENTIAL AND MAY BE SHOWN TO ANY INTERESTED PARTY.  I HEREBY SOLEMNLY SWEAR:

Q.   How long have you been in your current position, who is your supervisor, who is your second line supervisor, and what is your relationship to the Complainant?

A.   I have been in my current position since June 1998.  My immediate supervisor is Sany Alegria, Supervisory District Adjudication Officer, and my second line supervisor is Wade Prater, Section Chief.  At the time of the issues of this complaint, my position was Deputy Assistant District Director for Detention and Deportation, GS-14, at the L.A. District Office, and my immediate supervisor was Leonard Kovensky, ADD for Detention and Deportation, and my second line supervisor was Rosemary Melville, Deputy District Director.  My working relationship to the Complainant is that I may have participated in the selection process in a vacancy for which he applied.

Page  1  of  8  pages

Initials _____

102

Q.   Did the Complainant applied for, was he found qualified for, but not selected to the position of Detention Enforcement Officer, GS-1802-5/6/7, in about June 1996?   What, if any, role did you play in this selection, and who were the recommending and selecting officials?

A.   If we interviewed the Complainant, he must have applied and was found qualified by Personnel.   I assume he was not selected based on his complaint.   My role in this selection process was to review the recommendations made by the interviewing officers, and make a final recommendation to the District Director, who was Mr. Rogers.

Q.   Do you recall if Mr. Rogers concurred with your recommendations in this selection, or if he raised any questions about your recommendations?

A.   I don't believe so, but I do not recall in this particular situation.   Usually, Mr. Rogers ~~just~~ concurred with the recommending officials.

Q.   Who was selected through this announcement, and what is the selectee's race, national origin, religion and sex?

A.   I do not recall how many people, or who specifically was selected through this announcement.   At that particular time, we were enhancing our workforce and bringing on a lot of new employees, many of whom were Detention Enforcement Officers.

Page  2  of  8  pages                                    Initials

103

Q. Please describe the process used to determine selections through this announcement.

A. I do not remember this specific selection process, but usually in this type of a selection, after Personnel ~~makes~~ creates a list of qualified applicants, we try to contact all applicants and arrange for an interview ~~with~~ through the Administrative Assistants or a Supervisory Detention Enforcement Officer. Prior to the interview, a line of questions is generated which coincides with the position being filled. Each candidate is then asked the same questions during the interview. The interviewing officers complete an evaluation of the interview, making a recommendation, either not recommended, recommended, or highly recommended. I do not recall that any of the candidates were not recommended. I would start with those who were highly recommended, and make a final recommendation to Mr. Rogers, and he would generally concur and authorize the selections based on my recommendation.

Q. Do you have any reason to believe that there was any deviation from this process in the selection at issue here?

A. No.

Q. If you had more highly recommended candidates than you had available openings, how would you further break down the candidates to determine a final selection recommendation?

Page 3 of 8 pages

Initials 

104

A.   I would speak with the interviewing officers about their interviews, and let them make a recommendation.   I don't recall that ever happening.   There were occasions when we ran out of highly recommended candidates, but still had openings, and there were more recommended candidates than openings, then I would further discuss the candidates with the interviewing officers.   I do not recall if that happened with this particular selection.

Q.   Do you recall whether the Complainant was recommended or highly recommended?

A.   I do not recall at this time, but based on the response that I gave to the EEO Counselor in January 1997, I assume the Complainant was recommended, not highly recommended, for this selection.

Q.   Would you have personally reviewed a candidate's application to distinguish among candidates?

A.   I may have taken a cursory look at the applications.   I probably did that in this case.

Q.   What objective criteria were used to evaluate the qualifications of the candidates for a Detention Enforcement Officer position?

A.   I don't recall.

Page _4_ of _8_ pages                    Initials _____

105

Q.   Do you recall the qualifications of the Complainant or of any other candidate who was selected through this annoucement?

A.   Not at this time.

Q.   Based on your cursory review of the applications and on the recommendations of the interviewing officers, are you confident that all of the selectees were better qualified than the Complainant?  Why?

A.   I believe so.  I would never know how a particular selection is going to pan out, but based on the process and the knowledge gained through that process, I believe the best candidates were selected.

Q.   To your knowledge, was the race, national origin, religion, or sex of the Complainant or any other candidate used as factors at any stage of this selection process?  Do you have any reason to believe the interviewing officials discriminated against the Complainant or anyone else because of race, national origin, sex, or religion?

A.   Those are not criteria for selection.  I have no reason to believe the interviewing officials, who were Rafael Roldan and Denise Lopez according to what I have been told, would have used these factors in their interviews or in their recommendations.  I am very sensitive to this issue, and I would take steps to ensure that no one discriminates in our selections.

Page  5  of  8  pages                              Initials _____

106

Q.   Is there any way to tell a candidate's race, national origin, or religion through information contained in an application?

A.   I don't believe there is even a block on the application for this information.

Q.   What would you assume is the Complainant's race, national origin, and religion, based on his last name?

A.   Probably either white or Hispanic.   I would not know his national origin or his religion.

After reviewing the Complainant's affidavit, please answer the following questions:

Q.   Do you have any reason to dispute the Complainant's listing of his qualifications?

A.   Since I do not have his application in front of me, I would have no reason to dispute that.  We did have a lot of applicants from the BOP, and many of our Detention Enforcement Officers did come from BOP backgrounds.

Q.   Based on his description of his qualifications, would you say that his experience, training, and skills made him less qualified than those who were selected to this entry level position?

Page  6  of  8  pages                                    Initials _____

101

A.   I don't know who the other applicant are, with whom he is comparing himself.

Q.   Speaking generally about a typical candidate pool for this type of position, were his qualifications unusually high for someone applying for this position?

A.   Based on his statement, I would say yes.  The majority of people from BOP are Case Officers.

Q.   Why then would he not have been considered as a top candidate,  and at least have made the cut in a large group selection?

A. . I can't answer that.  I relied on the recommendation of the interviewing officers, and I do not recall his specific qualifications or anything about him at this point.

Q.   If the Complainant was highly recommended for the position by the interviewing officers, is there any reason he would not have been selected?

A.   No.  If he was highly recommended, I would definitely have sent his name up for selection.

Q.   Have you ever made selection recommendations based on an attempt to make sure certain groups of people are more fairly represented within the agency?

Page 7 of 8 pages                                          Initials 

108

A.   No.   I   have   never   considered   anything   other   than qualifications needed for the positions being filled.  I rely on and expect my interviewing officials to maintain a fair attitude toward all applicants, and to make recommendations to me that are only based on job-related factors.  I have no reason to believe anything different happened in this situation.

Q.   Do you have any other information to provide at this time?

A.   I maintain that, based on the information I had gained through the selection process, I believed that the best qualified candidates were being selected in this vacancy.

I HAVE READ THE ABOVE STATEMENT CONSISTING OF ___8___ PAGES AND IT IS TRUE AND COMPLETE TO THE BEST OF MY KNOWLEDGE AND BELIEF.   I UNDERSTAND THAT THE INFORMATION I HAVE GIVEN IS NOT TO BE CONSIDERED CONFIDENTIAL AND THAT IT MAY BE SHOWN TO THE INTERESTED PARTIES.

_____
(Affiant's Signature)

SUBSCRIBED AND SWORN BEFORE ME

AT _Los Angeles, CA_, ON THIS

_22_ DAY OF _September_ 1998

_____
David S. Buxton
Contract EEO Investigator

Page _8_ of _8_ pages                    Initials _____

109

**PRIVACY ACT** ... **CE TO EEO COMPLAINT INTE**... **W WITNESSES**
**(OTHER THAN COMPLAINANT)**
**FOR DISCRIMINATION COMPLAINT INVESTIGATION INTERVIEW**

## GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

## AUTHORITY

The authority to collect the information requested by affidavit, statement or other type of testimony is derived from one or more of the following:

Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1613/1614; Title 5, United States Code, Sections 1303 and 1304; title 42, United States Code, Section 2000e-16; and Executive Order 11478, as amended.

## PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the equal employment opportunity (EEO) complaint of discrimination and/or reprisal. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the EEO complaint of discrimination and/or reprisal. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to EEO Commission activities, to the intelligence agencies of the Federal Government, or to others for uses as published in the Federal Register.

## EFFECTS OF NON-DISCLOSURE

Disclosure of the information sought is voluntary; however, failure to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you up to and including removal. Applicants in such cases may be refused employment.

Disclosure of information by present or prospective Government contractors is also voluntary, although failure to furnish the above requested information where the contract so provides may result in administrative sanctions, including disqualification to enter into a contract or termination of an existing contract.

_David S. Breton_
**(Signature of Interviewer)**

_Beverly K. Wilson_
**(Signature of Witness)**

_9-22-98_
**Date**

_Los Angeles, CA_
**Place**

_110_

EXHIBIT F-4

AFFIDAVIT

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

I, RAFAEL E. ROLDAN, (HISPANIC, CARRIBEAN/SOUTH AMERICAN NATIONAL ORIGIN, MALE, ROMAN CATHOLIC), DEPORTATION OFFICER, GS-1801-12, DETENTION AND DEPORTATION BRANCH, RIVERSIDE SUB-OFFICE, LOS ANGELES DISTRICT, WESTERN REGION, IMMIGRATION AND NATURALIZATION SERVICE, DEPARTMENT OF JUSTICE, IN LOS ANGELES, CALIFORNIA, MAKE THE FOLLOWING STATEMENT FREELY AND VOLUNTARILY TO DAVID BUXTON, WHO HAS IDENTIFIED HIMSELF TO ME AS AN EEO CONTRACT INVESTIGATOR FOR THE DEPARTMENT OF JUSTICE, INVESTIGATING A COMPLAINT OF DISCRIMINATION FILED BY FRANK CARDARELLA, KNOWING THAT THIS STATEMENT IS NOT CONFIDENTIAL AND MAY BE SHOWN TO ANY INTERESTED PARTY. I HEREBY SOLEMNLY SWEAR:

Q.   How long have you been in your current position, who is your supervisor, who is your second line supervisor, and what is your relationship to the Complainant?

A.   I have been in my current position since July 1997.  My immediate supervisor is Jose Z. Sanchez, Supervisory Deportation Officer, and my second line supervisor is Mary Greer, Deputy Assistant District Director.  At the time of the issues of this complaint, my position was Detention and Deportation Officer, GS-1801-11 in San Pedro, California, and my immediate supervisor was Marjorie Alvarez, Supervisory Deportation Officer, and my second line supervisor was Bevery Wilson, DADD.  I had no working relationship with the Complainant at that time, but I played a role in the selection process at issues in this investigation.

Q.   Did the Complainant applied for, was he found qualified for, but not selected to the position of Detention Enforcement Officer, GS-1802-5/6/7, in about June 1996? What, if any, role did you play in this selection, and who were the recommending and selecting officials?

A.   Yes, he did apply, he was found qualified, and he was not selected.  I conducted interviews with the some of the candidates.  I was filling in for someone else, and I believe there were three days total of interviews.  I conducted interviews on just one day, and the Complainant was interviewed on that day.  I completed an evaluation worksheet during my interviews and gave an indication of either recommended or highly recommended for each candidate.  As I recall, I indicated highly recommended for the Complainant, but I am not certain at this time.  I conducted about five or six interviews, but I don't

Page 1 of 4 pages                                        Initials RER

///

remember for sure.   Denise Lopez, another Deportation Officer, also participated in the interviews, and I believe she was the lead interviewer who participated in all the interviews.   I believe there was a third person in the interview, but I cannot remember who at this time.

Q.   Who was selected to this position, and what is the selectee's race, national origin, religion and sex?

A.   I don't know who was selected to this position.   I believe a lot of people were selected through this process, and I recall possibly hearing that many of the interviews had been done in San Pedro, but that Ms. Wilson or the downtown L.A. office took over the interviews, and possibly re-interviewed the candidates again, and made selections.   I did not receive any feedback about the interviews I conducted, so I do not know exctly how much weight my interview and recommendation carried in the selection process.   I believe that had I found something negative through the interview that it would likely have counted against the candidate, but I believe that probably all qualified and highly recommended candidates were put into the same category and selections somehow made from that pool of candidates.   I don't know what Ms. Wilson or anyone else did to further break down the candidates in order to make final decisions about the selections, and I don't know how many people were ultimately selected.

Q.   Please describe the process used to determine selections through this announcement.

A.   Outside of the interviews which I conducted, it would be speculation on my part.   I was not involved in the final decision process, and I don't know how those final selection decisions were made.   I would imagine that Ms. Wilson probably made the final decisions, but I don't even know that for sure.   I believe that Leonard Kavensky was still fairly new as the Assistant District Director for Detention and Deportation, and that Ms. Wilson was still for the most part running the department at the time of the selections.   At some point the District Director, Richard Rogers, would have signed off on the selections.

Q.   In the interviews that you conducted, what criteria were used to evaluate the qualifications of the candidates?

Page 2 of 4 pages                                        Initials RPR

112

A.    I believe the evaluation sheet had some questions on it, and I believe we improvised with some questions.  I don't remember all the questions, but they were all job and performance-related.  I do remember that the Complainant had a significant amount of college background, which stood out among all the candidates I interviewed.  He also had some kind of training, and was in the middle of IOBTC training for Immigration Officers at the time of the interview.  This was a training that was above and beyond the requirements of a Detention Officer, and I felt was a significant advantage for him.  Given the fact that it was an entry level position, and that it was not an Officer Corps position and did not require a lot of technical knowledge, I felt that his training and education gave him a significant edge over other candidates.  I felt he was the most educated candidate that I interviewed.   He also had an extensive background with the Bureau of Prisons, which he felt was very advantageous.  At the time of the interview, I did not know just how valuable his BOP experience was, but I felt he was the best qualified of the candidates that interviewed based on his educational background.  I am pretty certain I ~~have~~ GAVE him a highly recommended mark, but I don't know how many other candidates received similar marks.

Q.    To your knowledge, was the race, national origin, religion, or sex of the Complainant or any other candidate used as factors at any stage of this selection process?  Do you have any reason to believe the recommending or selecting officials discriminated against the Complainant or anyone else because of race, national origin, sex, or religion?

A.    I have no firsthand knowledge which would leave me to believe that race, national origin, sex, or religion were factors at any stage of the selection process.  It was certainly not used by me.  There is a quota program in which the agency attempts to meet certain goals for minority placement, and that does prejudice the system against a person such as the Complainant, a white male, in competition with minority candidates, in my opinion.  As a FORMER manager, I was aware of these agency goals.  There have been rumors in the agency that Ms. Wilson, because she is black, tends to select an imbalanced number of blacks.  She hired me, so I know she does not exclusively select blacks, but it appeared to me that, prior to Mr. Kovensky coming in as Ms. Wilson's supervisor, she selected more black Detention Officers than were represented by the population.

Page  3  of  4  pages                                    Initials ___

113

I don't know about her pools of candidates, and that may draw an unfair or improper suggestion, but that was the observation of many employees in our program.   I was not actively looking for this kind of a pattern, but others would point it out from time to time.

Q.   Do you have any other information to provide at this time?

A.   In closing, I would just state that the agency has appeared to correct the situation with the Complainant, although unintentionally.  I believe he was probably more qualified for this position than many who were selected, but he also would have been stuck in a series that would have been very difficult to break out of past the GS-7 level.  Because he was not selected to the position at issue, he was available for selection to a higher graded Deportation Officer position, and he is now at the GS-11 grade with the potential for moving up to the GS-12 position.  The circumstances may have been inconvenient for him when he was not selected, but he was very fortunate to be selected to the position and series he is now in.  Now he lives and works in this area, and he has a much better position and work schedule.

I HAVE READ THE ABOVE STATEMENT CONSISTING OF _4_ PAGES AND IT IS TRUE AND COMPLETE TO THE BEST OF MY KNOWLEDGE AND BELIEF.   I UNDERSTAND THAT THE INFORMATION I HAVE GIVEN IS NOT TO BE CONSIDERED CONFIDENTIAL AND THAT IT MAY BE SHOWN TO THE INTERESTED PARTIES.

_Rafael E. Reldan_
(Affiant's Signature)

SUBSCRIBED AND SWORN BEFORE ME

AT _Los Angeles, CA_, ON THIS
_21_ DAY OF _September_ 1998

_David S. Buxton_
David S. Buxton
Contract EEO Investigator

Page _4_ of _4_ pages                         Initials _RER_

114

## PRIVACY ACT NOTICE TO EEO COMPLAINT INTERVIEW WITNESSES
### (OTHER THAN COMPLAINANT)
### FOR DISCRIMINATION COMPLAINT INVESTIGATION INTERVIEW

### GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

### AUTHORITY

The authority to collect the information requested by affidavit, statement or other type of testimony is derived from one or more of the following:

Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1613/1614; Title 5, United States Code, Sections 1303 and 1304; title 42, United States Code, Section 2000e-16; and Executive Order 11478, as amended.

### PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the equal employment opportunity (EEO) complaint of discrimination and/or reprisal. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the EEO complaint of discrimination and/or reprisal. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to EEO Commission activities, to the intelligence agencies of the Federal Government, or to others for uses as published in the Federal Register.

### EFFECTS OF NON-DISCLOSURE

Disclosure of the information sought is voluntary; however, failure to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you up to and including removal. Applicants in such cases may be refused employment.

Disclosure of information by present or prospective Government contractors is also voluntary, although failure to furnish the above requested information where the contract so provides may result in administrative sanctions, including disqualification to enter into a contract or termination of an existing contract.

_____
(Signature of Interviewer)

_Rafael E. Roldan_
(Signature of Witness)

_9-21-98_
Date

_Los Angeles, CA_
Place

115

EXHIBIT F-5

**EXHIBIT F5**

## AFFIDAVIT

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

I, DENISE L. WEAVER-LOPEZ, (BLACK, U.S. NATIONAL ORIGIN, FEMALE, NON-DENOMINATIONAL), DEPORTATION OFFICER, GS-1801-12, DETENTION AND DEPORTATION BRANCH, LOS ANGELES DISTRICT OFFICE, WESTERN REGION, IMMIGRATION AND NATURALIZATION SERVICE, DEPARTMENT OF JUSTICE, IN LOS ANGELES, CALIFORNIA, MAKE THE FOLLOWING STATEMENT FREELY AND VOLUNTARILY TO DAVID BUXTON, WHO HAS IDENTIFIED HIMSELF TO ME AS AN EEO CONTRACT INVESTIGATOR FOR THE DEPARTMENT OF JUSTICE, INVESTIGATING A COMPLAINT OF DISCRIMINATION FILED BY FRANK CARDARELLA, KNOWING THAT THIS STATEMENT IS NOT CONFIDENTIAL AND MAY BE SHOWN TO ANY INTERESTED PARTY. I HEREBY SOLEMNLY SWEAR:

Q. How long have you been in your current position, who is your supervisor, who is your second line supervisor, and what is your relationship to the Complainant?

A. I have been in my current position since 1991. My immediate supervisor is Marjorie Alvarez, Supervisory Deportation Officer, and my second line supervisor is Mary Greer, Deputy Assistant District Director. At the time of the issues of this complaint, my supervisor was Jose Sanchez, Supervisory Deportation Officer, and my second line supervisor was Beverly Wilson, Deputy Assistant District Director. I had no working relationship with the Complainant at that time, but I played a role in the selection process at issues in this investigation.

Q. Did the Complainant apply for, was he found qualified for, but not selected to the position of Detention Enforcement Officer, GS-1802-5/6/7, in about June 1996? What, if any, role did you play in this selection, and who were the recommending and selecting officials?

*Page 1 of 5*

*Initials* [signature]

116

A.   Based on the nature of this complaint, I assume he did apply and was found qualified and was considered, but not selected to this position.  I have no reason to dispute this.  However, this was a group hiring, and I conducted a lot of interviews.  I do not remember the Complainant specifically among the candidates.  My role was that I was the lead interviewer in the selection process, and as such I made general recommendations for the applicants.  Others involved in the interviewing included Ralph Roldan, and possibly Benjamin Valverde.  Mr. Roldan may have just sat in for Mr. Valverde for one day of interviewing.  The final recommending and selecting officials were Ms. Wilson and Leonard Kovensky.

Q.   Who was selected to this position, and what is the selectee's race, national origin, religion and sex?

A.   This was a group hiring, consisting of about 10 individuals to the best of my recollection.  I do not remember who was selected through this announcement.

Q.   Please describe the process used to determine selections through this announcement, from the point of basic qualification from Personnel.

A.   Personnel gave us a list of qualified candidates, along with the applications.  The interviewers, including myself and whoever else was conducting the interview, reviewed the applications on the day of the interviews.  There was a specific set of questions, I believe developed by Ms. Wilson and Mr. Kovensky, which were asked of all the candidates during the interview.  These were all job and performance related questions.  We completed evaluation

*Page 2 of 5*                                    *Initials*

sheets on each candidate, consisting of notes from their answers to each question.   We asked them if they had any additional information to provide, *AND IF THEY REQUIRED ADDITIONAL INFORMATION FROM US,* and then as the interviewers we would each indicate whether the candidate interviewed was either recommended or highly recommended for the position.

Q.   In the interviews that you conducted, what objective criteria were used to evaluate the qualifications of the candidates?

A.   We looked at their answers to the interview questions, which dealt with why they wanted the position, how they would deal with long hours and shifts, and probably questions about dealing with situations involving detaining people and questioning people.   I can't remember all the specific questions, but they revolved around the position for which they were competing.   We also looked at the motivation the individual appeared to have for the position, the candidate's attitude toward the job, and their willingness to endure long hours  and shifts.

Q.   To your knowledge, was the race, national origin, religion, or sex of the Complainant or any other candidate used as factors at any stage of this selection process?   Do you have any reason to believe the recommending or selecting officials discriminated against the Complainant or anyone else because of race, national origin, sex, or religion?

A.   We were instructed not to bring those kinds of factors into the interview, so I am sure it was not considered at the point of the interview.   We were not even supposed to ask if they were married.   I have no firsthand knowledge which would leave me to believe that race, national origin, sex, or religion were factors

*Page 3 of 5*                                      *Initials*

at any stage of the selection process. There were various races and nationalities which were hired, so I do not believe these were factors at all.

Please answer the following questions after reviewing the Complainant's affidavit:

Q.   After reviewing the Complainant's description of his qualifications, do you recall interviewing someone with that background?

A.   Not specifically.

Q.   Given the nature of the position you were interviewing for, would you consider a candidate with his experience, training, and education to have been more qualified for the position, generally, than others in the pool of candidates?

A.   On paper alone, I would say that most of the individuals applying for this position did not have as much experience or training as the Complainant. Without recalling his specific interview, and without the notes I took in that interview, I cannot say what other factors were considered for the recommendation. I would say that, just based on his description of his own qualifications, he would likely have been rated as highly recommended, but there may have been other factors which made him less attractive as a potential hire, and he may have been just recommended, but not highly. I do not know at this point.

Page 4 of 5                                        Initials _____

119

Q.   Has it appeared to you that the agency, and Ms. Wilson specifically, have targeted specific groups for selection, rather than just considering only the qualifications of candidates?

A.   It has never appeared to me that selections were made based on what groups were desired for our agency.  I have no reason to believe Ms. Wilson considered anything other than qualifications and abilities.

Q.   Do you have any other information to provide at this time?

A.   No.

I HAVE READ THE ABOVE STATEMENT CONSISTING OF __5__ PAGES AND IT IS TRUE AND COMPLETE TO THE BEST OF MY KNOWLEDGE AND BELIEF.  I UNDERSTAND THAT THE INFORMATION I HAVE GIVEN IS NOT TO BE CONSIDERED CONFIDENTIAL AND THAT IT MAY BE SHOWN TO THE INTERESTED PARTIES.

(Affiant's Signature)

SUBSCRIBED AND SWORN BEFORE ME

AT _Los Angeles, CA_ , ON THIS

_23_ DAY OF _September_ ___ 1998

David S. Buxton
Contract EEO Investigator

Page 5 of 5

Initials

120

*PRIVACY ACT* **NOTICE TO EEO COMPLAINT/INTER\ WITNESSES**
(OTHER THAN COMPLAINANT)
*FOR DISCRIMINATION COMPLAINT INVESTIGATION INTERVIEW*

## GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

## AUTHORITY

The authority to collect the information requested by affidavit, statement or other type of testimony is derived from one or more of the following:

Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1613/1614; Title 5, United States Code, Sections 1303 and 1304; title 42, United States Code, Section 2000e-16; and Executive Order 11478, as amended.

## PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the equal employment opportunity (EEO) complaint of discrimination and/or reprisal. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the EEO complaint of discrimination and/or reprisal. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to EEO Commission activities, to the intelligence agencies of the Federal Government, or to others for uses as published in the Federal Register.

## EFFECTS OF NON-DISCLOSURE

Disclosure of the information sought is voluntary; however, failure to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you up to and including removal. Applicants in such cases may be refused employment.

Disclosure of information by present or prospective Government contractors is also voluntary, although failure to furnish the above requested information where the contract so provides may result in administrative sanctions, including disqualification to enter into a contract or termination of an existing contract.

_David S Sister_
**(Signature of Interviewer)**

_Denise L Weaver-Lopez_
**(Signature of Witness)**

_9-23-98_
Date

_Los Angeles, CA_
Place

_121_

EXHIBIT F-6

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
**MEMORANDUM**
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**TO:**       **File**
**FROM:**     **EEO Investigator**
**DATE:**     **November 18, 1998**
**RE:**       **Selection Documentation**

I requested a full selection package, including vacancy announcement, position description, evaluation criteria, ratings and evaluation tools, interview notes, selection certificates, applications, and SF-50's and SF-52's for the selection at issue. The agency did not provide any information relative to any aspect of the selection process. See Exhibit F9 for my document request, with response from EEO Specialist Marshall Carr at the Los Angeles District Office.

*David S. Buxton*

David S. Buxton
EEO Contract Investigator

EXHIBIT F-7

```
**************************
        MEMORANDUM
**************************
```

TO:         File
FROM:       EEO Investigator
DATE:       November 18, 1998
RE:         Comparative Data


I requested a list of selections made by the same recommending and selecting officials for two years prior to the selection at issue in this complaint, annotated to show selectees by position, race, national origin, sex, and religion.  The agency provided no comparative data as requested. See Exhibit F9 for my document request, with response from EEO Specialist Marshall Carr at the Los Angeles District Office.

*David S. Buxton*

David S. Buxton
EEO Contract Investigator

173

EXHIBIT F-8

***********************
## MEMORANDUM
***********************

TO:        File
FROM:      EEO Investigator
DATE:      November 18, 1998
RE:        Rules, Regulations, Affirmative Action Plan


I requested relevant excerpts from all rules, regulations, and agreements pertaining to the selection at issue in this complaint, as well as a Merit Promotion Plan and excerpts from the Affirmative Action Plan.  The agency did not provide any of this requested information.  See Exhibit F9 for my document request, with response from EEO Specialist Marshall Carr at the Los Angeles District Office.


*David S. Buxton*

David S. Buxton
EEO Contract Investigator

124

EXHIBIT F-9

211 South 300 East
Pleasant Grove, Utah 84602
September 3, 1998

Mr. Monte Montesanto
EEO Specialist
INS Regional Office
Laguna Niguel, CA
(949) 360-3192 tel
(949) 360-3126 fax

Dear Mr. Montesanto,

Included with this transmittal are the document requests for the EEO Investigations we discussed last week.  I have been in contact with Marshall Carr, and he is assisting in contacting witnesses and arranging for the on-site interviews.  I intend to be in Los Angeles for these cases between September 14 and September 24.

If the documents could be ready for me when I arrive on site or prior to my departure, that would be ideal.  If you have any problems gathering anything I have requested, please let me know immediately.  Also, if any of the requested documents are either unavailable or non-existent, please indicate this on agency letterhead so the item can be addressed in the case file.  Your help in gathering documents is appreciated.  Please call me at 801-796-8139 if you have any questions or concerns.

Sincerely,

David S. Buxton
Contract EEO Investigator

Enclosed:      Document Requests

125

## DOCUMENTS NEEDED: FRANK CARDARELLA EEO CASE, #I-97-0109

1. Organizational Chart for US Immigration Service at 300 N. Los Angeles Street, Los Angeles, CA 90012 as of September 1996.

2. Workforce Profile for organizational unit in which vacancy occurred, as of September 1996, with each employee and supervisor identified by name, position title, series, grade, race, religion, sex and national origin.

3. List of selections made by the same recommending and selecting officials for the period between September 1994 and September 1996 with each selectee identified by name, race, religion, sex, national origin, position (title, series and grade) for which selected, and date of selection.

4. Merit Promotion package, including the following:
   - Vacancy Announcement for the Detention Enforcement Officer positions that was filled around September 1996.
   - Position Description
   - Evaluation Criteria or Crediting Plan
   - Rating of Candidates
   - Any instruments used to evaluate or rate the candidates, matrices, notes from interviews, etc.
   - Certificate of Eligible Candidates/Selection Roster, with candidates identified by sex, religion, race and national origin
   - Evaluation worksheets prepared by panel, if applicable
   - SF-171's and attachments *for Complainant and selectee only*
   - SF-52's (both sides)and SF 50's associated with the selection.

5. Merit Promotion Plan and guidelines in effect at the time of the selection.

6. Relevant excerpts from Approved Affirmative Action Plan in effect at the time of the selection.

7. Relevant excerpts from any other regulations and guidelines, and union agreements pertaining to the selection at issue.

*If any of these requested documents are either unavailable or non-existent, please make a note of it on agency letterhead so the item can be addressed in the case file.*

124

# FAX COVER PAGE

## CONFIDENTIAL - PRIVACY ACT MATERIALS

**DATE:**      September 3, 1998

**TO:**       Mr. Monte Montesanto, EEO Specialist
              **INS Regional Office**
              **Laguna Niguel, CA**
              **(949) 360-3192 tel.**
              **(949) 360-3126 fax**

**FROM:**     David S. Buxton
              **211 South 300 East**
              **Pleasant Grove, UT 84062**
              **(801) 796-8139 Phone & Fax**

**SUBJECT:** Document Requests for various EEO cases.

**TOTAL PAGES, INCLUDING COVER: 8**

**MESSAGE:**      See letter

127

Immigration and
Naturalization Service

300 North Los Angeles Street,    Room 8064    Los Angeles, CA 90012

# DISTRICT EEO OFFICE

# FAX

Date: _____

Number of pages including cover sheet: _____



**To:**
D. BUXTON
211 SOUTH 300 EAST
PLEASANT GROVE UT

Phone: 801 796 8139

Fax phone: _____

CC: _____

**From:**    Marshall Carr , EEO Mgr

Phone:    213-894-1663

Fax phone:    213-894 - 1147

**REMARKS:**    ☐ Urgent    ☐ For your review    ☐ Reply ASAP    ☐ Please comment

DAVID . I HAVE BEEN IN CONTACT WITH INS
PERSONNEL OFFICE ON A DAILY BASIS AND THEY
ARE ATTEMPTING TO LOCATE THE MISSING DOCS
K. HAMPTON WAS LEAVE FOR THE BALANCE OF
THE DAY AND I WILL AGAIN MEET WITH HER &
THE PERSONNEL OFFICER TO OBTAIN WHATS NEEDED.

128

TOTAL P.01

EXHIBIT G



129

January 24, 1999


D. Diane Weaver
Acting Director
Office of Equal Employment Opportunity
U.S. Immigration & Naturalization Service
425 I Street, N.W., Room 2210
Washington, D.C. 20536

Re: Complaint of Discrimination (#I-97-0109)

Dear Ms. Weaver:

     This is to acknowledge your letter of 12/29/98, along with,
receipt of my EEO complaint file.  With consideration given to my
rights and options that I am afforded during this phase of the
EEO process, I am requesting a final agency decision without a
hearing, which also includes, a case review by the Department of
Justice, Complaint Adjudication Officer.

     It is my hope that a fair and impartial ruling will be made
in resolving this complaint, which will alleviate the need for
any further action on my part.  I'm confident that this matter
can be resolved to a mutual satisfaction without a great deal of
difficulty or embarrassment.

     Thank you for your time and assistance in this matter.

Sincerely,

Frank J. Carderella

130

P 066 454 532

**US Postal Service**
## Receipt for Certified Mail
No Insurance Coverage Provided.
Do not use for International Mail *(See reverse)*

Sent to
DIANE WEAVER (DIRECTOR EEO)

Street & Number
425 I STREET N.W. ROOM 1122

Post Office, State, & ZIP Code
WASHINGTON, D.C. 20536

| | |
|---|---|
| Postage | $ .32 |
| Certified Fee | 1.10 |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt Showing to Whom & Date Delivered | N/O |
| Return Receipt Showing to Whom, Date, & Addressee's Address | |
| TOTAL Postage & Fees | $ 2.52 |

Postmark or Date
AUG 29 1997

PS Form 3800, April 1995



SENDER

Is your RETURN ADDRESS completed on the reverse side?

3. Article Addressed to:
DIANE WEAVER
DIRECTOR OF EEO
IMMIGRATION & NATURALIZATION STATE
425 I STREET N.W. ROOM 1122
WASHINGTON, D.C. 20536

4a. Article Number
P 066 454 532

4b. Service Type
☐ Registered   ☐ Insured
☒ Certified    ☐ COD
☐ Express Mail ☐ Return Receipt for Merchandise

7. Date of Delivery

8. Addressee's Address (Only if requested and fee is paid)

PS Form 3811, December 1994          **DOMESTIC RETURN RECEIPT**

Thank you for using Return Receipt Service.

131

P 066 454 532

**US Postal Service**
**Receipt for Certified Mail**
No Insurance Coverage Provided.
Do not use for International Mail *(See reverse)*

| Sent to DIANE WEAVER (DIRECTOR EEO | | |
|---|---|---|
| Street & Number 425 I STREET N.W. ROOM 1122 | | |
| Post Office, State, & ZIP Code WASHINGTON D.C. 20536 | | |
| Postage | $ | .32 |
| Certified Fee | | 1.00 |
| Special Delivery Fee | | |
| Restricted Delivery Fee | | |
| Return Receipt Showing to Whom & Date Delivered | | 1.00 |
| Return Receipt Showing to Whom, Date, & Addressee's Address | | |
| TOTAL Postage & Fees | $ | 2.52 |
| Postmark or Date | | |

PS Form 3800, April 1995

LONG 29 1997



PENALTY FOR PRIVATE
USE TO AVOID PAYMENT
OF POSTAGE, $300

Print your name, address and ZIP Code here

F CARDERELLA

UNITED STATES POSTAL SERVICE

Official Business

132



**U.S. Department of Justice**
Immigration and Naturalization Service

HQ 60/8

*425 I Street NW*
*Washington, DC 20536*

DEC 2 9 1998

Mr. Frank J. Carderella
3651 Gardenia Avenue
Long Beach, CA 90807

Re: Complaint of Discrimination
Filed by: <u>Mr. Frank J. Carderella</u>
Complaint No. <u>I-97-0109</u>

Dear Mr. Carderella:

This is in reference to your EEO Complaint number I-97-0109. I have enclosed a copy of your investigative file. Within 30 calendar days after receipt of this correspondence you have the right to request:

(1)  A hearing by a U. S. Equal Employment Opportunity Commission (EEOC) Administrative Judge who will conduct the hearing and recommend a decision to the Department of Justice, after which a final decision will be rendered by the Complaint Adjudication Officer of the Department of Justice; or

(2)  A final agency decision without a hearing based on the existing complaint file by the Department of Justice, Complaint Adjudication Officer.

*133*

If you want a hearing or final agency decision without a hearing you must NOTIFY THIS OFFICE WITHIN 30 CALENDAR DAYS OF RECEIPT OF THIS NOTICE; otherwise your complaint will be forwarded to the Complaint Adjudication Officer for issuance of the final agency decision.

Your request for a hearing or a final agency decision without a hearing must be addressed to this office, so that necessary arrangements can be made.

If you are dissatisfied with the final agency decision by the Complaint Adjudication Officer of the Department of Justice (with or without a hearing), you may file a notice of appeal to the EEOC Office of Federal Operations (OFO) within 30 days of receipt of the final agency decision or notice of dismissal. Also, you may submit a brief or statement to support your appeal to OFO within 30 days after filing the notice of appeal. If you are represented by an attorney then the 30 days time frame shall be calculated from the receipt of the required document by your attorney.

Any appeal to the EEOC should be addressed to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. At the same time of your appeal to EEOC, you must furnish a copy of the appeal and any supporting brief or statement to this office at the following address:

        Director, Office of EEO, Room 1122
        Immigration and Naturalization Service
        425 I Street, N.W.
        Washington, D.C. 20536

Instead of an appeal to the EEOC you may file a civil action in a proper federal district court within 90 calendar days after receiving the final agency decision or, if the agency has not issued a final decision on your complaint, after 180 calendar days from the date the formal complaint was filed. If you file a civil action under Title VII of the Civil Rights Act of 1964, as amended, or the Rehabilitation Act of 1973, as amended, and you do not have, or are unable to obtain the services of a lawyer, you may request the court to appoint a lawyer to represent you. In such

circumstances as the court may deem just, the court may appoint a lawyer and may authorize the commencement of the action without the payment of fees, costs or security.  Any such request must be made within the above referenced 90-day time limit for filing suit and in such form and manner as the court may require.

You are further notified that if you file a civil action, you must name the appropriate Department or Agency head as the defendant. Failure to name the head of the Department or Agency may result in the loss of any judicial redress to which you may be entitled.  The head of the Department of Justice is Janet Reno, Attorney General.

If you decide to appeal to the EEOC Office of Federal Operations, you will still have an opportunity to file a civil action in a federal district court within 90 calendar days after receiving the EEOC's final decision, or 180 calendar days after the date of your initial appeal to the Commission if the EEOC has not rendered a final decision.

In addition, if the Complaint Adjudication Officer of the Department of Justice has not issued a final decision on your complaint within 180 days of the date it was filed with the Service, you may file a civil action in an appropriate U.S.District Court.  **However, the filing of a civil action terminates the administrative processing of your complaint.**

If you need any additional information or have any questions please contact the Discrimination Complaints Staff on (202) 514-2732.

Sincerely,

D. Diane Weaver
Acting Director
Office of EEO

135

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write *Return Receipt Requested* on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):

1. ☐ Addressee's Address

2. ☐ Restricted Delivery

Consult postmaster for fee.

| 3. Article Addressed to: | 4a. Article Number |
|---|---|
| D. DIANE WEAVER<br>ACTING DIRECTOR<br>OFFICE OF EQUAL EMPLOYMENT OPPORTUNITY<br>U.S. IMMIGRATION NATIONALIZATION SERVICE<br>425 I STREET, N.W. ROOM 2210<br>WASHINGTON, D.C. 20536 | Z 295 302 416 |

4b. Service Type
☐ Registered   ☒ Certified
☐ Express Mail   ☐ Insured
☐ Return Receipt for Merchandise   ☐ COD

7. Date of Delivery  2-1-99

5. Received By: (Print Name)

8. Addressee's Address (Only if requested and fee is paid)

6. Signature: (Addressee or Agent)
X

PS Form 3811, December 1994      102595-97-B-0179      **Domestic Return Receipt**

Is your RETURN ADDRESS completed on the reverse side?

Thank you for using Return Receipt Service.

---

Z 295 302 416

**US Postal Service**
**Receipt for Certified Mail**
No Insurance Coverage Provided.
Do not use for International Mail (See reverse)

Sent to  DIANE WEAVER - EEO

Street & Number  425 I STREET N.W. ROOM 2210

Post Office, State, & ZIP Code  WASHINGTON DC 20536

| | |
|---|---|
| Postage | $ |
| Certified Fee | $0.33 |
| Special Delivery Fee | $1.40 |
| Restricted Delivery Fee  WASHINGTON DC 20536 | $0.00 |
| Return Receipt Showing to Whom & Date Delivered | $0.00 |
| Return Receipt Showing to Whom, Date, & Addressee's Address | $1.25 |
| TOTAL Postage & Fees | $0.00 |
| Postmark or Date | |

PS Form 3800, April 1995

136



Z 295 302 416

US Postal Service
**Receipt for Certified Mail**
No Insurance Coverage Provided.
Do not use for International Mail (See reverse)

Sent to
DIANE WEAVER—EEO

Street & Number
1801 L STREET NW Room 2210

Post Office, State, & ZIP Code
WASHINGTON D.C. 20536

| | |
|---|---|
| Postage | $ |
| Certified Fee | $0.33 |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt Showing to Whom & Date Delivered | $1.40 |
| Return Receipt Showing to Whom, Date, & Address | $0.00 |
| TOTAL Postage & Fees | $0.00 |
| Postmark or Date | $1.25 |
| | $0.00 |

PS Form **3800**, April 1995

JAN 27 1999 USPS

**First-Class Mail**
Postage & Fees Paid
USPS
Permit No. G-10

UNITED STATES POSTAL SERVICE

• Print your name, address, and ZIP Code in this box •

F. CARDERELLA
8651 GARDENIA AVE
LONG BEACH, CA 90807

137

EXHIBIT I

U. Department of Homeland Security
1 Federal Drive, Room 241
Ft. Snelling, MN 55111-4007

 **U.S. Immigration
and Customs
Enforcement**

September 8, 2008

**MEMORANDUM FOR:**  Daniel Sutherland
Officer for Civil Rights and Civil Liberties
Department of Homeland Security

**FROM:**  *Ramona D. Hix*
Acting EEO Manager, Formal Complaint Center
Office of Equal Employment Opportunity

**SUBJECT:**  Final Agency Decision in the EEO Complaint of Frank
Carderella, Case Number I-97-0109

Pursuant to Complainant's request dated January 24, 1999, please issue a final agency decision
(FAD) on the legacy Department of Justice (DOJ), Immigration and Naturalization Service
discrimination complaint captured above.

By letter dated January 24, 1999, Complainant requested a FAD without a hearing.  By letters dated
December 18, 2007, and March 18, 2008, Complainant through his attorney requested an update
with respect to the status of subject complaint.

The Immigration and Customs Enforcement, Office of Equal Employment Opportunity, Formal
Complaint Center (FCC) has no prior record of this discrimination complaint.  Similarly, DOJ,
Complaint Adjudication Office has no record of this discrimination complaint, or of issuing a FAD
in this matter.

By letter dated August 1, 2008, the FCC requested Complainant submit a copy of the report of
investigation (ROI), and all supporting and relevant documentation for processing purposes.
Enclosed you will find copies of all documentation submitted by Complainant's attorney to this
office.

If you have any questions regarding this request, please contact Gerald Rock at (612) 467-7407.

Attachments: ROI
Letter of Election, dated January 24, 1999
Correspondences between the FCC and Complainant's Attorney, variously dated

cc: Frank Carderella
John A. Stillman

*138*

RECEIVED SEP 0 8 2008

EXHIBIT J

LAW OFFICES OF

## GOOD, WILDMAN, HEGNESS & WALLEY

5000 CAMPUS DRIVE

NEWPORT BEACH, CALIFORNIA 92660-2181

(949) 955-1100

GARY ALDO DAPELO •
ROBERT W. DYESS, JR. •
GREGORY D. FISHER
MARSHA GABLE
PAUL C. HEGNESS •
HEIDI STILB LEWIS
NIKKI P. MILIBAND
MICHAEL P. RIDLEY
JOHN A. STILLMAN
THOMAS E. WALLEY •

•A PROFESSIONAL CORPORATION

ROY M. GOOD
(1923-2003)

PAUL W. WILDMAN
(1924-1983)

OF COUNSEL
DOUGLAS M. VICKERY
STEPHEN B. OTTO

FAX (949) 833-0633

January 15, 2009

Department of Homeland Security
Attn: Stephen T. Shih, Esq.
Deputy Officer
Equal Employment Opportunity Program
Office for Civil Rights and Civil Liberties
Building 410
Washington, DC 20528

Re:   Our Client: Frank Carderella/Final Agency Decision in EEO Complaint
      Case No. I-97-0109

Dear Mr. Shih:

I am writing to you pursuant to the above referenced matter which our office last heard about in a letter dated September 8, 2008 in which Ramona Hiu, The Acting EEO Manager, Formal Complaint Center Office of Equal Opportunity, referred the matter to Daniel Sutherland, Officer for Civil Rights and Civil Liberties Department of Homeland Security.

As you can see, this matter relates to a Complaint that began in 1997 and which somehow got lost in the system sometime after January 24, 1999.

Since December, 2007, we have attempted to determine the status of this matter and have been unsuccessful in those attempts.

Would you please advise me as to the current status of this matter and when we may expect to receive the final agency decision.

Very truly yours,

John A. Stillman

JAS\lc
cc: Frank Carderella
Carderella\ShihDeptHomelandSec15Jan09

*139*

11/7/09

Could Jack snib to write
to this person re: Jack
Corbarella

Department of Homeland Security
Attn: Stephen T. Shih, Esq.
Deputy Officer
Equal Employment Opportunity Program
Office for Civil Rights and Civil Liberties
Building 410
Washington, DC 20528

140

EXHIBIT K

LAW OFFICES OF

# GOOD, WILDMAN, HEGNESS & WALLEY

5000 CAMPUS DRIVE

NEWPORT BEACH, CALIFORNIA 92660-2181

(949) 955-1100

GARY ALDO DAPELO *
ROBERT W. DYESS, JR. *
GREGORY D. FISHER
MARSHA GABLE
PAUL C. HEGNESS *
HEIDI STILS LEWIS
NIKKI P. MILIBAND
JOHN A. STILLMAN
THOMAS E. WALLEY *

*A PROFESSIONAL CORPORATION

ROY M. GOOD
(1923-2003)

PAUL W. WILDMAN
(1924-1983)

OF COUNSEL
DOUGLAS M. VICKERY
STEPHEN B. OTTO

FAX (949) 833-0633

August 7, 2009

<u>Via U.S. Mail and U.S. Certified Mail, Return Receipt Requested</u>

Department of Homeland Security
Attn: Stephen T. Shih, Esq., Deputy Officer
Equal Employment Opportunity Program
Office for Civil Rights and Civil Liberties
Building 410
Washington, DC 20528

Re:   <u>Our Client: Frank Carderella/Final Agency Decision in EEO Complaint</u>
      <u>Case No. I-97-0109</u>

Dear Mr. Shih:

As you can tell from the above case number, this matter began in 1997. Somewhere within the process, the entire file was misplaced and the final agency decision was never provided to Mr. Carderella. Despite numerous contacts from Mr. Carderella, his attorney and his United States Representative, the file was not located and the final agency decision was never made or, if it was made, the decision was never forwarded to him.

The matter was resubmitted in 2008 and forwarded to you for a final agency decision. We last wrote to you concerning this issue in January 2009 and have yet to receive a response. This letter shall serve as a formal request for a right to sue letter.

On behalf of Mr. Carderella, I would like to express the fact that we are open and willing to sit down and discuss this matter with a representative of Immigration and Customs Enforcement in order to reach a settlement of Mr. Carderella's claim.

141

Department of Homeland Security
Attn: Stephen T. Shih, Esq., Deputy Officer
Equal Employment Opportunity Program
Office for Civil Rights and Civil Liberties
August 7, 2009\Page Two

I look forward to hearing from you with regard to this issue within the next two (2) weeks.

Very truly yours,

John A. Stillman

JAS\lc
cc: Frank Carderella
Carderella\ShihDeptHomelandSec7Aug09

142



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Department of Homeland Security
Attn: Stephen T. Shih
Deputy Officer
Equal Employment Opportunity
    Program
Office for Civil Rights and
    Civil Liberties
Building 410
Washington, DC 20528

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X  CRDS RECEIVING   ☐ Agent  ☐ Addressee

B. Received by ( Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
   ☐ Certified Mail   ☐ Express Mail
   ☐ Registered   ☒ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)

7008 1140 0003 2176 0855

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1640

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

**OFFICIAL USE**

| | |
|---|---|
| Postage | $  .44 |
| Certified Fee | 2.70 |
| Return Receipt Fee (Endorsement Required) | 2/20 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 5.34 |

Postmark
Here

Sent To  Dept. Homeland Security, Attn: Stephen
T. Shih, Deputy Officer, Equal Emp.
Street, Apt. No.; Opportunity Prog. , Office of Civil
or PO Box No. Rights and Civil Liberties, Bldg. 410
City, State, ZIP+4  Washington, DC 20528

7008 1140 0003 2176 0855

PS Form 3800, August 2006      See Reverse for Instructions

143



UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

John A. Stillman, Esq.
GOOD, WILDMAN, HEGNESS & WALLEY
5000 Campus Drive
Newport Beach, CA 92660



144

EXHIBIT L

Office for Civil Rights and Civil Liberties
U.S. Department of Homeland Security
Washington, DC 20528



OCT 02 2009

John A. Stillman, Esq.
Law Offices of Good, Wildman, Hegness & Walley
5000 Campus Drive
Newport Beach, CA 92660-2181

Dear Mr. Stillman:

Thank you for your letter to Stephen Shih, Esq., Deputy Officer, and Director for EEO and Diversity Programs dated August 7, 2009, on behalf of your client, Frank Carderella. The U.S. Department of Homeland Security (DHS), Office for Civil Rights and Civil Liberties (CRCL) manages the Department's Equal Employment Opportunity (EEO) programs and adjudicates discrimination complaints filed by DHS employees and applicants.

A review of CRCL records shows that on September 11, 2008, this Office received Mr. Carderella's request for a Final Agency Decision (Agency No. HS-97-ICE-000162); a decision will be issued as soon as possible. In your letter, you stated prior correspondence was sent to this Office in January 2009; however, our records do not show that we received that status request.

You also stated that your letter was to serve as a formal request for a "right to sue". However, please be advised there is no requirement in the Federal sector EEO process for a "right to sue" letter to be issued in order to proceed to Federal District Court. Title 29, Code of Federal Regulations § 1614.407 states a civil action can be filed in U.S. District Court within 90 days of receipt of the agency's final action on an individual or class complaint if no appeal has been filed, or after 180 days from the date of filing an individual or class complaint if an appeal has not been filed and final action has not been taken. Additional information can be found at the Equal Employment Opportunity Commission's website: http://eeoc.gov/federal/regulations.html.

We hope that the information provided has been helpful. For further status inquiries, please contact (202) 254-8250 or e-mail statusFA@dhs.gov.

Sincerely,

*Chrystal R. Young*

Chrystal R. Young
Complaint Adjudication Manager
Office of EEO Programs
DHS Office for Civil Rights and Civil Liberties

145