1  ANDRÉ BIROTTE JR.
   United States Attorney
2  LEON W. WEIDMAN
   Assistant United States Attorney
3  Chief, Civil Division
4  SEKRET T. SNEED (State Bar No. 217193)
   Assistant United States Attorney
5        Federal Building, Suite 7516
         300 North Los Angeles Street
6        Los Angeles, California 90012
7        Telephone:    (213) 894-3551
         Facsimile:    (213) 894-7819
8        E-mail:       sekret.sneed@usdoj.gov

9  Attorneys for Defendant
10 JANET NAPOLITANO, as Secretary of the
   Department of Homeland Security

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| FRANK JOSEPH CARDERELLA, | No. CV09-8299 R (MANx) |
|---|---|
| Plaintiff, | DECLARATION OF BEVERLY K. WILSON IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION |
| v. | |
| JANET NAPOLITANO, as Secretary of the Department of Homeland Security, | |
| Defendant. | Date: September 20, 2010<br>Time: 10:00 a.m.<br>Ctrm: Spring Street Courthouse<br>    255 East Temple Street, Ctrm 8<br>    Los Angeles, California 90012<br><br>[Fed. R. Civ. Proc. 56; Local Rule 56-1]<br><br>Honorable Manuel L. Real |

I, Beverly K. Wilson, declare as follows:

1. I joined the Immigration and Naturalization Service ("INS") in 1966. In 1994, I was promoted to the Deputy Assistant District Director for Detention and Deportation for the Los Angeles District Office. I retired from that position in 1997. I have personal knowledge to the best of my recollection of the facts set forth below. If called as a witness, I could and would testify competently thereto, under oath.

2. In late 1995 and throughout 1996, INS sought to increase its workforce by hiring hundreds of new employees. In particular, the Los Angeles District Office had received approval to increase the number of Detention Enforcement Officers ("DEO") by more than 50%.

3. As Deputy Assistant District Director, part of my duties involved making final recommendations for hiring DEOs in the Los Angeles District Office. I apparently made the final recommendations for the selection of individuals to fill the DEO vacancy that Plaintiff applied for, but I do not remember any specific information regarding this DEO vacancy announcement. Specifically, I do not remember the vacancy announcement itself, the number of positions INS wanted to fill with this vacancy announcement, the number of individuals who were selected to fill this specific DEO vacancy announcement, nor the identity of the individuals who were selected.

4. While I do not specifically remember the selection process followed for this DEO vacancy announcement, to the best of my recollection, INS's custom and practice for selecting DEOs in which I was involved as Deputy Assistant District Director during this time period was as follows:

5. First, the INS personnel office would review the applications and create a list of qualified applicants, i.e., those individuals who met specific criteria for the position. Second, the administrative assistants or supervisory detention enforcement officers would contact the applicants to arrange interviews. Before any interviews

were conducted, however, a list of questions relevant to the position were created for the interview panels to ask each applicant. Each interview panel consisted of two to three INS employees. The panels were not allowed to deviate from the list of questions because we wanted to make certain that each applicant was asked the same questions, regardless of who was on the panel.

6. The panels then would interview the applicant based on the list of set questions. Each interviewing official on the panel would complete a written evaluation regarding the applicant and also submit a written recommendation for each applicant: "not recommend," "recommend" or "highly recommend." These evaluations and recommendations then would be forwarded to me for final recommendations.

7. The applications of those individuals who had been graded "highly recommended" by the interviewing officials were submitted to the District Director, who at the time of the incident alleged in the Complaint, was Richard Rogers. Director Rogers generally would concur and authorize selections based on the final recommendations.

8. Since we always followed this procedure in selections, I know that we followed this procedure for this particular vacancy announcement.

9. I do not remember the identities of the individuals who were on the list of "highly recommended" applicants I received for the vacancy announcement at issue here. I also do not remember who I recommended to Director Rogers for selection for this particular announcement.

10. It was my custom and practice, however, to never make any decisions for hiring or selection based on any prohibited characteristics, like race, national origin, religion or sex. Further, it was my custom and practice to consider the recommendations from the interviewing officials and to verify that those applicants recommended by the interviewing officials met the minimum qualifications for the position. The interviewing officials' recommendations never included any information

1 regarding an applicant's race, national origin, or religion, and I never attempted to
2 discover this information in any way prior to, during, or after making a decision for
3 hiring or selection. I always followed this custom and practice in making final
4 recommendations for hiring, and, as a result, I know that I followed such custom and
5 practice in hiring for the vacancy announcement that Plaintiff applied for.

6     11. At the time of the incident alleged in the Complaint, I had not yet met
7 Plaintiff, and I did not know Plaintiff's race, national origin, or religion when I made
8 final recommendations for filling the DEO positions.

9     I declare under penalty of perjury under the laws of the United States of America
10 that the foregoing is true and correct and that this declaration was executed this __18__th
11 day of August 2010.

*[signature]*
BEVERLY K. WILSON