John A. Stillman, Esq. (SBN 43731)
Heidi Stilb Lewis, Esq., (SBN 98046)
GOOD, WILDMAN, HEGNESS & WALLEY
5000 Campus Drive
Newport Beach, California 92660
Telephone (949) 955-1100
Facsimile: (949) 833-0633


Attorneys for Plaintiff
Frank Joseph Carderella

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| FRANK JOSEPH CARDERELLA, | Case No. CV 09-8299-R (MANx) |
|---|---|
| Plaintiff, | **STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| JANET NAPOLITANO, as Secretary of the Department of Homeland Security, | |
| Defendant. | |

| MOVING PARTY ALLEGED UNCONTROVERTED FACTS | RESPONSES |
|---|---|
| 1. In late 1995 and throughout 1996, the Immigration and Naturalization Service ("INS") sought to increase is workforce by hiring hundreds of new employees. In particular, the Los | 1. Undisputed. |

1

STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| 1 | Angeles Field Office received approval to increase the number of DEOs by more than 50%. (Declaration of Beverly K. Wilson ["Wilson Decl."], ¶2.) | |
| 2. | INS's custom and practice for the selection of the DEOs at this time was as follows: First, the INS personnel office would review the applications and create a list of qualified applicants, i.e., those individuals who met specific criteria for the position. Second, the administrative assistants or supervisory detention enforcement officers would contact the applicants to arrange interviews. Before any interviews were conducted, however, lists of questions relevant to the position were created for the interview panels to ask each applicant. Each interview panel consisted of two to three INS employees. The panels were not allowed to deviate from the list of questions in order to make certain that each applicant was asked the same questions, regardless of who was on the panel. (*Id.*, ¶¶4-5.) | 2. Undisputed. |
| 3. | The panels then would interview the applicant based on the list of set questions. Each interviewing official on the panel would complete a written evaluation regarding the applicant and also submit a written recommendation for each applicant: "not recommended," "recommended" or "highly recommended." These evaluations and recommendations then would be forwarded to Beverly Wilson, | 3. Undisputed. |

2

STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

| | | |
|---|---|---|
| | who was the Deputy Assistant District Director for Detention and Deportation at the time of the incident alleged in the Complaint. (*Id.*, ¶6.) | |
| | 4. As Deputy Assistant District Director, Mrs. Wilson would make final recommendations for the DEO positions by submitting the applications of those individuals who had been graded "highly recommended" by the interviewing officials to the District Director, who at the time of the incident alleged in the Complaint, was Richard Rogers. Director Rogers generally would concur and authorize selections based on the final recommendations. (*Id.*, ¶¶ 6-7.) | 4. Undisputed. |
| | 5. Plaintiff states that he is a white Catholic male of Italian descent. In November, 1995, Plaintiff applied for a Detention Enforcement Officer ("DEO") position with the Immigration and Naturalization Service ("INS") in the Los Angeles Field Office. (Compl., ¶¶ 5 & 9.) | 5. Undisputed. |
| | 6. Defendant currently has no records or files regarding the particular vacancy announcement that Plaintiff applied under for the DEO position. The respective INS offices, or Office of Personnel Management, that could have advertised this particular vacancy announcement during this period followed a two-year file retention schedule for vacancy announcements. (Declaration of Linda M. Smithson, ¶¶ 2-3.) | 6. Undisputed. |

STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| 7. Since the relevant vacancy announcement occurred in 1995-1996, these records are past the two-year retention schedule and appear to have been destroyed in accordance with that schedule. (*Id.*, ¶4.) | 7. Undisputed that the records were destroyed. Disputed that the destruction of the records was in accordance with a two year retention policy. The records and files relevant to the vacancy were required by INS policy to be preserved because the INS had received notice upon the filing of the Plaintiff's complaint for discrimination that said records and files may be relevant to the alleged claim for discrimination (Deposition of Kamala Hampton ("Hampton") Pg.34, Lines 8-25) |
| 8. There were approximately 25 available DEO positions under this vacancy announcement. (Declaration of AUSA Sekret T. Sneed ["Sneed Decl."], ¶2, Ex. A, at pp. 40-21-41:8.) | 8. Undisputed. |
| 9. Also in November, 1995, Plaintiff applied for an immigration inspector position with INS, specifically requesting the geographic area of San Diego-San Ysidro, California. (Declaration of Robert L. Turner, ¶2, Ex. A.) | 9. Undisputed. |
| 10. At the time Plaintiff applied for the DEO and immigration inspector positions in November 1995, he was employed by the Federal Bureau of Prisons as a case manager at the Federal Correctional Institution in Terminal Island. (Sneed Decl., ¶2, Ex. A. At p. 18-12.) | 10. Undisputed. |
| 11. In or around March 1996, INS hired Plaintiff as an immigration inspector in San Ysidro, California. (*Id.*, at p. 77:20-22.) | 11. Undisputed. |

STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT


| | |
|---|---|
| 12. After Plaintiff began working as an immigration inspector, Plaintiff learned that the INS wanted to telephonically interview him for the DEO position. In or around May 1996, Rafael Roldan, who at the time of the interview was an INS Detention and Deportation Officer, and Denise Weaver-Lopez, who at the time of the interview was an INS Deportation Officer, interviewed Plaintiff. (*Id.*, at pp. 35:12-39:15.) | 12. Undisputed. |
| 13. Officer Roldan and Officer Weaver-Lopez ultimately recommended Plaintiff for the DEO position (Compl., ¶9.) | 13. Undisputed. |
| 14. Mrs. Wilson does not remember the identities of the individuals who were on the list of "highly recommended" applicants that she received for the vacancy announcement at issue here. She also does not remember who she recommended to Director Rogers for selection for this particular announcement. (Wilson Decl., ¶9.) | 14. Undisputed. |
| 15. It was Mrs. Wilson's custom and practice, however, to never make any decisions for hiring or selection based on any prohibited characteristics, like race, national origin, religion or sex. (*Id.*, ¶10.) | 15. Disputed. Insufficient evidence is offered to support any custom and practice on the part of Mrs. Wilson. (See Evidentiary Objections filed to the Decl. of Ms. Wilson filed concurrently herewith No. 6) |
| 16. Further, it was Mrs. Wilson's custom and practice to consider the recommendations for the interviewing officials and to verify that those applicants recommended by the interviewing officials met the minimum qualifications for the position. The | 16. Disputed. Insufficient evidence is offered to support any custom and practice on the part of Mrs. Wilson. (See Evidentiary Objections filed to the Decl. of Ms. Wilson filed concurrently herewith No. 6) |

STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| interviewing official's recommendations never included any information regarding an applicant's race, national origin, or religion, and Mrs. Wilson never attempted to discover this information in any way prior to, during, or after making a decision for hiring or selection. (*Id.*) | |
| 17. Mrs. Wilson always followed this custom and practice in making final recommendations for hiring, and, as a result, she knows that she followed such custom and practice in hiring for the vacancy announcement that Plaintiff applied for. (*Id.*) | 17. Disputed. Insufficient evidence is offered to support any custom and practice on the part of Mrs. Wilson. (See Evidentiary Objections filed to the Decl. of Ms. Wilson filed concurrently herewith No. 6) |
| 18. Moreover, at the time of the incident alleged in the Complaint, Mrs. Wilson had not yet met Plaintiff, and she did not know Plaintiff's race, national origin, or religion when she made final recommendations for filling the DEO positions. (*Id.*, ¶11.) | 18. Disputed. Plaintiff is informed and believes that when he filled out the application for the DEO position he completed a portion of the application identifying his race, national origin and religion as questions seeking such information were included in the INS application.( See Carderella Decl. ¶ 2; Deposition of Hampton Pg. 23 Lines 16-20) |
| 19.  On September 15, 1996, Plaintiff inquired about his application for the DEO position and learned that he had not been selected. (Compl., ¶¶1&4; Sneed Decl., ¶2, Ex. A at pp. 46:13-47:15.) | 19. Undisputed. |
| 20.  On or about September 25, 1996, Plaintiff contacted a counselor with the INS Office of Equal Employment Opportunity, claiming that he had not been selected for the position on the basis of his race, national origin, religion and sex. (*Id.*, at p. 53:6-20.) | 20. Undipsuted. |

STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| 21. Plaintiff did not know Mrs. Wilson at the time he applied for the DEO position. Moreover, Plaintiff cannot set forth evidence that Mrs. Wilson knew his race, national origin, and/or religion at the time she made final recommendations for the DEO positions. (*Id.*, at pp. 68:5-69;7 & 74:2; Wilson Decl., ¶11.) | 21. Undisputed that Plaintiff did not know Mrs. Wilson. But Disputed that Plaintiff does not have evidence that Mrs. Wilson knew his race, national origin, and/or religion at the time she made the final recommendation for the DEO positions. Plaintiff is informed and believes that when he filled out the application for the DEO position he completed a portion of the application identifying his race, national origin, sex and religion as questions seeking such information were included in the INS application. (See Carderella Decl. ¶ 2 Deposition of Hampton Pg. 23, Lines 16-20) |
| 22. Plaintiff also has no evidence regarding the qualifications, race, national origin, religion or sex of the vast majority of the individuals who were selected to fill the DEO position. (Sneed Decl., ¶2, Ex. A at pp. 41:9-43:10, 66:22-67:5, 81:14-82:17 & 84:12-85:28.) | 22. Undisputed |
| 23. Plaintiff now admits that his religion and sex did not play a role in his non-selection. (*Id.*, at p. 95:4-20.) | 23. Undisputed |
| 24. An INS workforce profile summary reflects that in the Los Angeles District, as of March 31, 1997, there were 32 total white DEOs (Grades 4 to 7), 17 total black DEOs (Grades 4 to 7), 27 total Hispanic DEOs (Grades 4 to 7), and 7 total Asian DEOs (Grades 4 to 7). (Sneed Decl., ¶3, Ex. B.) | 24. Disputed. The INS workforce profile lacks foundation and is irrelevant to the alleged discrimination. (See Evidentiary Objections filed concurrently herewith to the Decl. of Sekret Sneed and Exhibits thereto No. 1) |
| 25. The workforce profile summary also reflects that there were 75 total | 25. Disputed. The INS workforce profile lacks foundation and is |

| | |
|---|---|
| male DEOs (Grades 4 to 7) and 8 total female DEOs (Grades 4 to 7). (Sneed Decl., ¶3, Ex. B.) | irrelevant to the alleged discrimination. (See Evidentiary Objections filed concurrently herewith to the Decl. of Sekret Sneed and Exhibits thereto No. 1) |

Opposing Party also contends that the following other material facts are in dispute:

26. The INS destroyed the records and files relating to the filling of the DEO positions after receiving notice on September 25, 1996 from Plaintiff that Plaintiff believed the INS had discriminated against him on the basis of race, national origin, religion and sex in not selecting Plaintiff for any one of the DEO vacancies. (Declaration of Linda M. Smithson, ¶¶2-3; Carderella Decl. ¶ 9

27. The INS destroyed the records and files relating to the filling of the DEO positions after receiving notice upon the filing of Plaintiff's discrimination complaint on January 29, 1997 that Plaintiff was claiming the INS discriminated against him on the basis of race, national origin, religion and sex in not selecting Plaintiff for any one of the DEO vacancies. (Declaration of Linda M. Smithson, ¶¶2-3; Carderella Decl. ¶ 9

28. The INS destroyed the records and files relating to the filling of the DEO positions despite a policy of the INS that said records and files must be preserved upon notice of a claim for discrimination. (Declaration of Linda M. Smithson, ¶¶2-3; Deposition of Kamala Hampton ("Hampton") Pgs. 34 Line 8-Page 37Line 10)

29. The destroyed records and files would have reflected the qualifications and likely the race, national origin, religion and sex of those applicants selected for the DEO vacancies. (Deposition of Hampton Pages 23-4)

30. An adverse inference arises from the spoliation of the relevant records and files that the information contained therein would have been favorable to Plaintiff in supporting his discrimination claim against the INS. (*Residential Funding Corp. v. Degeorge Fin. Corp.*, 306 F.3d 99, 107(2d Cir. 2002; also see *World Courier v. Barone,* No. C 06-3072 THE, 2007 WL 1119196, at *1 (N.D.Cal, April 16, 2007); *In re Napster, Inc.* 462 F. Supp2d 1060, 1078 (N.D.Cal. 2006)

STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

31. Plaintiff completed as part of the application for the DEO position, questions relating to his race, national origin, religion and sex. (Carderella Decl. ¶ 2)

32. The INS retained the portion of the application identifying the applicant's race, national origin, religion and sex in the file. (Deposition of Hampton Pg. 24 Lines 1-18)

33. As a result of Plaintiff not being selected for any of the DEO vacancies, he has been deprived and will continue to be deprived of the retirement credits and pension rights from September 15, 1996 to present that he otherwise would have been entitled to had he been selected for one of the DEO vacancies. (Carderella Decl. ¶ 20)

34. Plaintiff was at all times relevant qualified for the position of DEO. (Carderella Decl. ¶ 7)

35. Plaintiff was a member of a Protected Class (White, Italian, Male) (Carderella Decl. ¶ 2)

36. Despite his qualifications, Plaintiff was not selected for any of the vacant DEO positions. (Carderella Decl. ¶ 6)

Dated: August 30, 2010   GOOD, WILDMAN, HEGNESS & WALLEY

By: _____
John A. Stillman, Attorneys for Plaintiff, Frank Joseph Carderella

STATEMENT OF GENUINE ISSUES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT