John A. Stillman, Esq., State Bar No. 43731
Heidi Stilb Lewis, Esq., State Bar No. 98046
GOOD, WILDMAN, HEGNESS & WALLEY
5000 Campus Drive
Newport Beach, California 92660
Telephone (949) 955-1100
Facsimile: (949) 833-0633

Attorneys for Plaintiff Frank Joseph Carderella

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| FRANK JOSEPH CARDERELLA,<br><br>          Plaintiff,<br><br>     vs.<br><br>JANET NAPOLITANO, as Secretary of the Department of Homeland Security<br><br>          Defendant. | ) CASE NO.  CV 09-8299 R (MANx)<br>)<br>) **DECLARATION OF JOHN A.**<br>) **STILLMAN IN SUPPORT OF**<br>) **PLAINTIFF'S MOTION FOR ORDER**<br>) **IMPOSING ISSUE-RELATED AND**<br>) **EVIDENTARY SANCTIONS**<br>) **AGAINST DEFENDANT**<br>)<br>) Date:  October 12, 2010<br>) Time:  10:00 a.m.<br>) Ctrm:  Spring Street Courthouse<br>)          312 North Spring Street, Ctrm 8<br>)          Los Angeles, California 90012<br>)<br>) Trial Date:  October 19, 2010<br>) Time: 9:00 a.m.<br>) Ctrm:  Spring Street Courthouse<br>)          312 North Spring Street, Ctrm 8<br>)          Los Angeles, California 90012<br>)<br>) Honorable Manuel L. Real<br>)<br>) |

1

1.     I, John A. Stillman, am an attorney duly licensed to practice law before the U.S. District Court for the Central District of California and a partner with Good Wildman Hegness & Walley, the attorneys of record for the Plaintiff in the above-referenced matter.  I have personal knowledge of the facts stated herein and if called as a witness, I could and would testify competently thereto. This declaration is made in support of Plaintiff's Motion for Order Imposing Issue-Related/Evidentiary Sanctions Against Defendant.

2.     On August 27, 2010, I took the deposition of Kamala Hampton, a current employee of Homeland Security and a former employee of the Immigration and Naturalization Service ("INS") where she held the position of Human Resource Specialist from 1990 through 2005. It was during this time period, in 1996, that the Plaintiff herein applied for a vacant Detention Enforcement Officer position and was not selected despite his qualifications for the same.

3.     Attached hereto are true and correct excerpts of the relevant portions of Ms. Hampton's deposition testimony taken from the transcript which establish that (1) the INS had a policy which required the preservation of records and files upon receiving notice of a claim for discrimination relating to the same and (2) the portion of the application for an INS position reflecting an applicant's race, national origin, sex and religion was customarily retained in the applicant's file.

4.     Plaintiff will lodge a certified copy of Ms. Hampton's deposition with the court prior to the hearing on this motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed this 10th of September of 2010.

JOHN A. STILLMAN

2

U.S. DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**CERTIFIED COPY**

FRANK JOSEPH CARDERELLA,                 )
                                         )
                    Plaintiff,           )
                                         )
          vs.                            )      Case No. CV 09-9299-R
                                         )              (MAN) x
JANET NAPOLITANO,                        )
                                         )
                    Defendant.           )
                                         )
_____)

DEPOSITION OF:   KAMALA HAMPTON

Newport Beach, California
Friday, August 27, 2010

Reporter:   Marlene Apodaca, CSR No. 6579

1

**HAHN & BOWERSOCK 800-660-3187 FAX 714-662-1398**
**151 KALMUS DRIVE, SUITE L1 COSTA MESA, CA 92626**

1                    Newport Beach, California

2                    Friday, August 27, 2010

3                         10:05 a.m.

4                            * * *

5

6                    KAMALA HAMPTON,

7  having been first duly sworn by the Certified Shorthand

8  Reporter, was examined and testified as follows:

9

10  BY MR. STILLMAN:

11      Q   Would you state your name and spell it for the

12  record, please?

13      A   My name is Kamala, K-a-m-a-l-a, Hampton,

14  H-a-m-p-t-o-n.

15      Q   Ms. Hampton, my name is John Stillman, and I'm

16  an attorney, and I am representing a man named

17  Frank Carderella.

18          Frank Carderella has filed a lawsuit against

19  Janet Napolitano, as the Head of Department of Homeland

20  Security.  The reason he has sued Janet Napolitano is the

21  law says you can't sue like the Immigration Department.

22  You have to sue the secretary of the office, under

23  Federal Law.  So even though Janet Napolitano I'm sure

24  knows nothing about this case, she is a defendant in this

25  case; and we are taking your deposition today to find out

                                                          5

1        A    I work at the Los Angeles Cargo Building on

2   La Cienega Boulevard in Los Angeles.

3        Q    And is that a government building, or is that a

4   building where they just rent office space?

5        A    A building where they rent office space.

6        Q    Okay.  And you said you started at that site in

7   January of 2005.

8             Did you start also as a mission support

9   specialist at that time also?

10       A    Yes.

11       Q    Okay.  And what was your job -- strike that.

12            When did you first go to work for the U.S.

13  Government?

14       A    In approximately March of 1987.

15       Q    And have you been employed by the

16  U.S. Government continually since then?

17       A    Yes, I have.

18       Q    Just prior to January of 2005, when you began

19  working as a mission support specialist at the La Cienega

20  location, what was your position with the

21  U.S. Government?

22       A    I was a human resources specialist.

23       Q    And by whom were you employed at that point?

24       A    Prior to the merger, I was under the Department

25  of Justice, U.S. Immigration and Naturalization Service.

12

1    Q    INS?

2    A    Yes.

3    Q    When you said "prior to the merger", that was

4  the merger of Immigration and Customs?

5    A    Yes.

6    Q    And the formation of ICE?

7    A    Well, Department of Homeland Security, which

8  included ICE, CBP and CIS, and other agencies.

9    Q    Okay.  What do all those letters stand for?

10    A    ICE is Immigration and Customs Enforcement.

11         CBP is Customs and Border Protection.

12         CIS is Citizenship and Immigration Services.

13  They are considered different bureaus.

14    Q    Within the Department of Homeland Security?

15    A    Correct.

16    Q    So when you went to work for Customs and Border

17  Protection in January of 2005, just prior to that you had

18  been working for INS?

19    A    Prior to that, I was working for INS.

20         And then at about that time they were doing the

21  reorganization, in about the middle or the end of 2004;

22  and our titles were changed from human resources

23  specialist to mission support specialist.

24         And at that time Department of Homeland Security

25  was doing a reorganization.  And by the end of 2004, our

13

1       A   It's the listing those persons that meet all of

2  the qualification requirements and who will be referred

3  to the program for their consideration.

4       Q   And is this basically just a list?

5       A   Yes.

6       Q   And what do you do with that list?

7       A   I type up the list.

8       Q   No.  I mean after you've typed it up.

9       Do you give it to somebody?

10       A   Yes, with the applications.

11       Q   With the applications?

12       A   Yes.

13       Q   So you give a list of a number of names of

14  everybody that qualified on paper, along with their

15  applications.

16       And who would you give that list to?

17       A   Whoever is designated as my contact point in the

18  program.

19       I need to backtrack, because there is one form

20  that we request in the announcement, but we remove it.

21  It was the race and nationality form.  It was removed.

22  We remove it.  We don't forward that form.

23       Q   Can you explain what you mean?  What is a race

24  and nationality form?

25       A   It's a form used for EEO purposes, that we were

27

1  told to basically put in the vacancy announcement.  It's

2  listed as a form, and it's an optional form.  But we

3  always would go through the vacancy announcement.  So if

4  it's in that application, in the person's application, we

5  remove it.

6      Q   Now, is this a form that is part of the

7  application, or is it a question on the application?

8      A   It's just a -- it's the form that has questions

9  about, you know, race and national origin.

10     Q   Okay.  And when you say you remove it, how do

11 you actually remove it?

12     A   I -- either myself or my assistant in the

13 personnel office, we remove it.

14     Q   But is it a separate sheet of paper, or do you

15 have to --

16     A   No.  It's a separate sheet of paper.

17     Q   Okay.  And so after the applications come back,

18 you just take that part of the application.  And what do

19 you do with that part of the applications?

20     A   Just hold it in the file.

21     Q   You do hold it in the file?

22     A   Yes.

23     Q   But it does not go any further than the

24 department, than your department?

25     A   Correct.

28

1    Q    And when you would maintain it, would you

2  maintain it at your offices, or would you send it to some

3  storage facility somewhere?

4    A    We had a storage area in the basement.

5    Q    And did you have any process, if somebody

6  objected in some way or filed some sort of a grievance,

7  with regard to the hiring process as to handling this

8  merit promotion file in a different way?

9    A    Could you restate that?

10   Q    It looks like you don't understand the question.

11   A    Yes.  I'm sorry.

12   Q    No.  That's okay.  Probably my fault.

13        Once this merit promotion file was put together

14 after people had received their jobs, and it was put into

15 a filing cabinet or a box, or however you kept it

16 somewhere, if one of the people who did not get the job

17 filed any kind of an appeal or a complaint or a

18 grievance, whatever the process was with regard to

19 that, was there any effort made at that point to make

20 sure that the merit promotion file was kept, at least

21 until in a grievance or appeal or whatever it is had been

22 finally resolved?

23   A    Yes.  If we have the file, we would pull the

24 file.

25        Sometimes the applicant who wasn't selected may

38

1 go through FOIA, Freedom Of Information or public

2 information, to obtain, you know, documentation or

3 information as to why they were not selected.

4     If an EEO complaint was filed or a grievance was

5 filed, we'd pull the file and sit with whomever, while

6 they review the file.

7     Q    Okay.  And once the file has been pulled because

8 something like that is going on, would there be any

9 effort or any process by which they determined to keep

10 that file until this appeal process or whatever it is was

11 finished, as opposed to destroying the file under the

12 regular file retention schedule?

13     A    Well, it depends on the time frame between when

14 the person files, and if we have the file.  Some of them

15 we -- if the person -- if we get a large grievance, and

16 it's within like a certain time frame, we just retain the

17 file.

18     Q    Okay.

19     A    We retain it.

20     Q    Were you aware in 1995 that when

21 Mr. Carderella -- do you recall -- and it would surprise

22 me if you did, but would you recall if Mr. Carderella did

23 or did not get the position as a detention enforcement

24 officer in 1995, when he applied for it?

25     A    No, I do not recall.

39