ANDRÉ BIROTTE JR.
United States Attorney
LEON W. WEIDMAN
Assistant United States Attorney
Chief, Civil Division
SEKRET T. SNEED (State Bar No. 217193)
Assistant United States Attorney
     Federal Building, Suite 7516
     300 North Los Angeles Street
     Los Angeles, California 90012
     Telephone:   (213) 894-3551
     Facsimile:   (213) 894-7819
     E-mail:     sekret.sneed@usdoj.gov

Attorneys for Defendant
JANET NAPOLITANO, as Secretary of the
Department of Homeland Security

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| FRANK JOSEPH CARDERELLA,<br><br>        Plaintiff,<br><br>        v.<br><br>JANET NAPOLITANO, as Secretary of the Department of Homeland Security,<br><br>        Defendant. | No. CV09-8299 R (MANx)<br><br>STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW<br><br>[Fed. R. Civ. Proc. 56; Local Rule 56-1]<br><br>Honorable Manuel L. Real |

After consideration of the papers in support of, and in opposition to, the Motion for Summary Judgment filed by defendant Janet Napolitano, in her official capacity as Secretary of the Department of Homeland Security, ("Defendant"), the Court determines that the following facts have been established as uncontroverted:

## UNCONTROVERTED FACTS

### The General INS Selection Process

1.     In late 1995 and throughout 1996, the Immigration and Naturalization Service ("INS") sought to increase its workforce by hiring hundreds of new employees. In particular, the Los Angeles Field Office received approval to increase the number of DEOs by more than 50%.  (Declaration of Beverly K. Wilson ["Wilson Decl."], ¶ 2.)

2.     INS's custom and practice for the selection of DEOs at this time was as follows: First, the INS personnel office would review the applications and create a list of qualified applicants, i.e., those individuals who met specific criteria for the position. Second, the administrative assistants or supervisory detention enforcement officers would contact the applicants to arrange interviews.  Before any interviews were conducted, however, a list of questions relevant to the position were created for the interview panels to ask each applicant.  Each interview panel consisted of two to three INS employees.  The panels were not allowed to deviate from the list of questions in order to make certain that each applicant was asked the same questions, regardless of who was on the panel.  (*Id*., ¶¶ 4-5.)

3.     The panels then would interview the applicant based on the list of set questions.  Each interviewing official on the panel would complete a written evaluation regarding the applicant and also submit a written recommendation for each applicant: "not recommended," "recommended" or "highly recommended."  These evaluations and recommendations then would be forwarded to Beverly Wilson, who was the Deputy Assistant District Director for Detention and Deportation at the time of the incident alleged in the Complaint.  (*Id.*, ¶ 6.)

1

4.     As Deputy Assistant District Director, Mrs. Wilson would make final recommendations for the DEO positions by submitting the applications of those individuals who had been graded "highly recommended" by the interviewing officials to the District Director, who at the time of the incident alleged in the Complaint, was Richard Rogers.  Director Rogers generally would concur and authorize selections based on the final recommendations.  (*Id.*, ¶¶ 6-7.)

## **Plaintiff Applies for the DEO Position**

5.     Plaintiff states that he is a white Catholic male of Italian descent.  In November, 1995, Plaintiff applied for a Detention Enforcement Officer ("DEO") position with the Immigration and Naturalization Service ("INS") in the Los Angeles Field Office.  (Compl., ¶¶ 5 & 9.)

6.     Defendant currently has no records or files regarding the particular vacancy announcement that Plaintiff applied under for the DEO position.  The respective INS offices, or Office of Personnel Management, that could have advertised this particular vacancy announcement during this period followed a two-year file retention schedule for vacancy announcements.  (Declaration of Linda M. Smithson, ¶¶ 2-3.)

7.     Since the relevant vacancy announcement occurred in 1995-1996, these records are past the two-year retention schedule and appear to have been destroyed in accordance with that schedule.  (*Id.*, ¶ 4.)

8.     There were approximately 25 available DEO positions under this vacancy announcement.  (Declaration of AUSA Sekret T. Sneed ["Sneed Decl."], ¶ 2, Ex. A, at pp. 40:21-41:8.)

9.     Also in November, 1995, Plaintiff applied for an immigration inspector position with INS, specifically requesting the geographic area of San Diego-San Ysidro, California.  (Declaration of Robert L. Turner, ¶ 2, Ex. A.)

10.     At the time Plaintiff applied for the DEO and immigration inspector positions in November 1995, he was employed by the Federal Bureau of Prisons as a case manager at the Federal Correctional Institution in Terminal Island.  (Sneed Decl., ¶ 2, Ex. A at p. 18:12-14.)

11.     In or around March 1996, INS hired Plaintiff as an immigration inspector in San Ysidro, California.  (*Id.*, at p. 77:20-22.)

12.     After Plaintiff began working as an immigration inspector, Plaintiff learned that the INS wanted to telephonically interview him for the DEO position.  In or around May 1996, Rafael Roldan, who at the time of the interview was an INS Detention and Deportation Officer, and Denise Weaver-Lopez, who at the time of the interview was an INS Deportation Officer, interviewed Plaintiff.  (*Id.*, at pp. 35:12-39:15.)

13.     Officer Roldan and Officer Weaver-Lopez ultimately recommended Plaintiff for the DEO position.  (Compl., ¶ 9.)

14.     Mrs. Wilson does not remember the identities of the individuals who were on the list of "highly recommended" applicants that she received for the vacancy announcement at issue here.  She also does not remember who she recommended to Director Rogers for selection for this particular announcement.  (Wilson Decl., ¶ 9.)

15.     It was Mrs. Wilson's custom and practice, however, to never make any decisions for hiring or selection based on any prohibited characteristics, like race, national origin, religion or sex.  (*Id.*, ¶ 10.)

16.     Further, it was Mrs. Wilson's custom and practice to consider the recommendations from the interviewing officials and to verify that those applicants recommended by the interviewing officials met the minimum qualifications for the position.  The interviewing officials' recommendations never included any information regarding an applicant's race, national origin, or religion, and Mrs. Wilson never

attempted to discover this information in any way prior to, during, or after making a decision for hiring or selection.  (*Id.*)

17.     Mrs. Wilson always followed this custom and practice in making final recommendations for hiring, and, as a result, she knows that she followed such custom and practice in hiring for the vacancy announcement that Plaintiff applied for.  (*Id.*)

18.     Moreover, at the time of the incident alleged in the Complaint, Mrs. Wilson had not yet met Plaintiff, and she did not know Plaintiff's race, national origin, or religion when she made final recommendations for filling the DEO positions.  (*Id.*, ¶ 11.)

### **Plaintiff Learns That He Is Not Selected**

19.     On September 15, 1996, Plaintiff inquired about his application for the DEO position and learned that he had not been selected.  (Compl., ¶¶ 1 & 4; Sneed Decl., ¶ 2, Ex. A at pp. 46:13-47:15.)

20.     On or about September 25, 1996, Plaintiff contacted a counselor with the INS Office of Equal Employment Opportunity, claiming that he had not been selected for the position on the basis of his race, national origin, religion and sex.  (*Id.*, at p. 53:6-20.)

21.     Plaintiff did not know Mrs. Wilson at the time he applied for the DEO position.  Moreover, Plaintiff cannot set forth evidence that Mrs. Wilson knew his race, national origin, and/or religion at the time she made final recommendations for the DEO positions.  (*Id.*, at pp. 68:5-69:7 & 74:2; Wilson Decl., ¶ 11.)

22.     Plaintiff also has no evidence regarding the qualifications, race, national origin, religion or sex of the vast majority of the individuals who were selected to fill the DEO positions.  (Sneed Decl., ¶ 2, Ex. A at pp. 41:9-43:10, 66:22-67:5, 81:14-82:17 & 84:12-85:28.)

23.     Plaintiff now admits that his religion and sex did not play a role in his non-selection.  (*Id.*, at p. 95:4-20.)

4

24.     An INS workforce profile summary reflects that in the Los Angeles District, as of March 31, 1997, there were 32 total white DEOs (Grades 4 to 7), 17 total black DEOs (Grades 4 to 7), 27 total Hispanic DEOs (Grades 4 to 7), and 7 total Asian DEOs (Grades 4 to 7).  (Sneed Decl., ¶ 3, Ex. B.)

25.     The workforce profile summary also reflects that there were 75 total male DEOs (Grades 4 to 7) and 8 total female DEOs (Grades 4 to 7).  (Sneed Decl., ¶ 3, Ex. B.)

## CONCLUSIONS OF LAW

26.     Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. Proc. 56(c)(2).

27.     "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original).  Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.* at 248.

28.     Summary judgment, therefore, must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  Moreover, a party opposing a summary judgment motion "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial.  If the opposing party does

5

not so respond, summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. Proc. 56(e)(2).  Summary judgment is appropriate here because Plaintiff cannot present any genuine issue of material fact that Defendant discriminated against him.

29.    Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

30.    In a Title VII case alleging disparate treatment, the plaintiff has the initial burden to prove "by the preponderance of the evidence a prima facie case of discrimination." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-253 (1981).  To establish a prima facie case of disparate treatment in hiring under Title VII, a plaintiff must demonstrate: (1) he is a member of a protected class, (2) he applied for and was qualified for the position that he applied for, (3) he was denied employment, despite his qualifications, and (4) the position remained open and the employer sought other similarly-qualified individuals outside the plaintiff's protected class.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Stated differently, the plaintiff must prove that the employer "treat[ed] some people less favorably than others because of their race, color, religion, sex, or national origin." *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983) (citations and quotations omitted).  *See also Burdine*, 450 U.S. at 258 ("[I]t is the plaintiff's task to demonstrate that similarly situated employees were not treated equally").

31.    Plaintiff satisfies the first three criteria to establish a prima facie case of discrimination, i.e., that he is a member of a protected class, that he applied for and was qualified for the DEO position and that he was denied employment, despite his qualifications.  Plaintiff, however, cannot satisfy the final criteria, i.e., that INS filled the DEO position with similarly-qualified individuals outside Plaintiff's protected

class.  Specifically, Plaintiff cannot set forth any facts that establish none of the individuals who INS selected to fill the approximately 25 DEO positions were white, Italian, Catholic and/or male.  Indeed, the INS March 31, 1997 workforce profile summary demonstrates that there were more white DEOs than any other race, or national origin, and that were more male DEOs than females.  Moreover, Plaintiff admits that he does not know background information about the majority of the individuals selected to fill the DEO positions at all.

32.   Plaintiff also specifically admitted at deposition that he does not believe his religion, or sex, was a basis for his non-selection.

33.   Plaintiff, therefore, cannot set forth any facts that he was similarly situated to the individuals who were eventually hired, or that he was treated less favorably because he was a different race, national origin, religion, or sex than the individuals who eventually were hired.

34.   Thus, Plaintiff cannot make a showing of a prima facie case of discrimination, and, as a result, Defendant is entitled to summary judgment.  *See Moran v. Selig*, 447 F.3d 748, 756-757 (9th Cir. 2006) (holding employer entitled to summary judgment where plaintiff-employees failed to establish that they were similarly situated to others who they claimed were treated more favorably); *Leong v. Potter*, 347 F.3d 1117, 1125 (9th Cir. 2003) (same).

//

//

//

7

1    35.    Judgment shall be entered in Defendant's favor consistent herewith.

2    ACCEPTED. (R)

3    Dated: Sept. 20, 2010

4

5    _____

6    HONORABLE MANUEL L. REAL
     UNITED STATES DISTRICT COURT JUDGE

7    Respectfully submitted,

8    ANDRÉ BIROTTE JR.
     United States Attorney

9    LEON W. WEIDMAN

10   Assistant United States Attorney
     Chief, Civil Division

11

12

13   ___/s/_____

14   SEKRET T. SNEED
     Assistant United States Attorney

15   Attorneys for Defendant

16   JANET NAPOLITANO, as Secretary of the
     Department of Homeland Security

17

18

19

20

21

22

23

24

25

26

27

28

8